**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **STACI WILLIAMS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 3:11-cv-00397-P** |
| | § | |
| **THE CITY OF DALLAS, TEXAS,** | § | |
| | § | |
| **Defendant.** | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S OBJECTIONS AND NOTICE OF APPEAL OF MAGISTRATE'S ORDER REGARDING PLAINTIFF'S MOTION TO COMPEL INFORMATION WITHHELD UNDER "LEGISLATIVE PRIVILEGE"

Plaintiff Staci Williams ("Plaintiff" or "Williams") files this, her Objections and Notice of Appeal of Magistrate's Order Regarding Plaintiff's Motion to Compel Information Withheld Under Legislative Privilege [Dkt. 90], and respectfully shows as follows:

### I.
### OBJECTIONS

The Magistrate erred in denying in part Plaintiff's Motion to Compel Information Withheld Under Legislative Privilege ("Plaintiff's Motion to Compel") on the following grounds:

1. Plaintiff provided proper written notice before the discovery deadline of the deposition of Defendant's 30(b)(6) representative. Defendant named Thomas Perkins as its 30(b)(6) representative but affirmatively refused to present him for deposition on the topics due to legislative privilege. As such, the issue was ripe for review by the Court, and Plaintiff's Motion to Compel the deposition should have been granted.

2. Plaintiff provided proper written notice of the deposition of City Councilmember Dwayne Caraway prior to the discovery deadline. Defendant affirmatively refused to present Dwayne Caraway for deposition due to legislative privilege. As such, the issue was ripe for review by the Court, and Plaintiff's Motion to Compel Dwayne Caraway's deposition should have been granted.

3. Plaintiff provided proper written notice of the deposition of City Councilmember Vonciel Jones Hill prior to the discovery deadline. Defendant affirmatively refused to present Vonciel Jones Hill for deposition due to legislative privilege. As such, the issue was ripe for review by the Court, and Plaintiff's Motion to Compel Dwayne Caraway's deposition should have been granted.

4. The City should be prohibited from offering any evidence at trial that it withheld during discovery under a claim of legislative privilege.

For these reasons, the Magistrate's Order was factually erroneous and contrary to existing law, and her decision on these matters should be reversed.

## II.
## RELEVANT FACTUAL BACKGROUND

This is an employment harassment, discrimination and retaliation lawsuit filed by former City of Dallas Municipal Court Judge Staci Williams against the City of Dallas ("the City" or "Defendant"). Although Plaintiff's allegations against the City extend over several years, at the heart of this case and the issues presented in Plaintiff's Motion to Compel is the question of whether the City Council's failure to reappoint Plaintiff as a municipal court judge for the 2010-2012 term was an act of harassment, discrimination or retaliation.

A.      **2006-2008 Term**

1.      In May of 2006, based on the recommendation of the Judicial Nominating Committee ("JNC"), the Dallas City Council hired Plaintiff as a full-time municipal court judge for a two-year term.  In her first two years as a full-time judge, Williams received ratings of "excellent" to "superior" in every category in her "Judicial Performance Evaluation."

2.      During the 2006-2008 term, Plaintiff contends in this suit that she was subjected to repeated comments and advances by fellow Dallas Municipal Court Judge Victor Lander, but she rebuffed those advances and attempted to ignore the behavior.

B.      **2008-2010 Term**

3.      In August 2008, the JNC recommended that Williams retain her position as full-time municipal court judge, and the City Council followed this recommendation, appointing Williams to the municipal court bench for the 2008-2010 term.

4.      In August 2008, the City Council also appointed Victor Lander as the new Administrative Judge for the Dallas Municipal Courts.

5.      Plaintiff contends in this suit that Lander subjected Plaintiff to further harassing, discriminatory and retaliatory conduct following his appointment as Administrative Judge, including but not limited to continuing to make inappropriate comments, breaking the typical protocol of seniority and assigning Plaintiff to the least-desirable court, substantially increasing Plaintiff's docket and work load, refusing to provide Plaintiff with the tools she needed to complete her heavy workload, unnecessarily documenting allegations of minor issues without providing any opportunity to respond, and preparing performance evaluations (that were

provided to the JNC and City Council) that did not fairly represent the job Plaintiff was doing on the bench.[1]

6.      In 2008 and 2009, Williams made a number of informal complaints concerning Lander's behavior to the City's Human Resources Department.  As no action was taken by the City, in July and August 2009 Williams made two formal, written complaints to Human Resources.  The City still took no action, so in November 2009 Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and the Texas Workforce Commission against the City concerning Lander's behavior.

C.      **2010 Reappointment Process – What We Know and What Defendant Has Been Barred by "Legislative Privilege" Assertions**

7.      In January 2010, the process of reappointment of the municipal court judges for the 2010-2012 term began.

8.      All of the municipal court judges, including Plaintiff, submitted applications to the JNC through the City's Human Resources Department.  We know it is the JNC's role to evaluate the candidates for municipal court judge and make recommendations to the Ad Hoc Legislative Committee of the Dallas City Council.  We also know the Dallas City Council ultimately decides who to appoint to the municipal court bench.  However, we do not know all of the details of the processes or procedures used by the JNC, the Ad-Hoc Legislative Committee of the Dallas City Council, or the Dallas City Council itself in determining who to appoint as a municipal court judge because the City has claimed Plaintiff is prohibited from discovery of this information due to "legislative privilege."[2]

---

[1] Plaintiff's First Amended Complaint [Dkt. 20], filed August 16, 2011.

[2] Exhibit 8, p. 60, ll. 2-10; Exhibit 9.

9.     We know from documents received through open records requests and in production in this case that the JNC was briefed by Dallas City Attorney Thomas Perkins.  Per the JNC's request, Perkins's briefing concerning Williams included descriptions of Williams's written complaints of harassment, discrimination and retaliation to the City's Human Resources Department and her EEOC filing.[3]  We know that Perkins believes it is appropriate for the JNC to consider whether a municipal court judge nominee has made a sexual harassment allegation when determining whether or not that person should be a municipal court judge for the City of Dallas.[4]  We do not know any further information concerning Perkins briefing to the JNC, however, because the City has claimed "legislative privilege" prohibits Plaintiff from discovering this information.[5]

10.     We know from documents received through open records requests and in production in this case that the JNC ranked and rated 18 candidates to refer to the Ad Hoc Legislative Committee of the Dallas City Council, and Plaintiff was ranked 17 out of 18 in order of preference.[6]  However, we do not know the City's position on the basis for this ranking because the City has claimed "legislative privilege" prohibits discovery of this information.[7]

11.     We know from documents received through open records requests that on May 27, 2010, council member Vonciel Jones Hill sent an email to Ad-Hoc Legislative Committee Chairwoman Angela Hunt, and cc'd Dallas City Attorney Thomas Perkins, asking if the

---

[3] City of Dallas Memorandum, dated June 2, 2010 (Plaintiff's 1628), attached as Exhibit 10.

[4] Exhibit 8, pp. 69-73.

[5] Exhibit 8, p. 68, ll. 10-15.

[6] City of Dallas Memorandum, dated May 24, 2010 (CITY 5059-5064), attached as Exhibit 11.

[7] Exhibit 8, p. 59, l. 7 – p. 60, l. 1.

committee could review any complaints by or against any of the current municipal court judges.[8] This request was reiterated three days later in a second email.[9]   However, during discovery the City claimed legislative privilege and attorney-client privilege prevented Plaintiff from discovering any further discussions on this topic.[10]

12.    We know from documents received through open records requests and in production in this case that on June 2, 2010, Perkins provided the Ad-Hoc Legislative Committee of the Dallas City Council with a memorandum purportedly summarizing Perkins's briefing to the JNC (hereinafter the "Perkins Memo").[11]   The Perkins Memo discusses only allegations against or by Plaintiff and includes Plaintiff's two written sexual harassment/retaliation complaints to Human Resources against Victor Lander and Plaintiff's charges filed with the EEOC against the City.[12]   Again, we know that City Attorney Perkins thinks it is appropriate to consider whether a municipal court judge has made harassment, discrimination or retaliation allegations against the City when the City is determining whether to reappoint that person.[13]   We know from Councilmember Vonciel Jones Hill's statement to the Dallas Morning News that she considered the details of Plaintiff's sexual harassment allegations when making her decision concerning reappointment.[14]   However, we know no other information concerning this

---

[8] Email chain between Vonciel Jones-Hill to Angela Hunt, dated May 27, 2010, attached as Exhibit 12.

[9] Exhibit 12.

[10] Exhibit 8, pp. 60-61.

[11] Exhibit 10.

[12] Exhibit 10.

[13] Exhibit 8, pp. 69-73.

[14] Exhibit 13.

memorandum or the City Council's discussion or consideration of this memorandum in making its reappointment decisions because the City claimed legislative privilege prohibits Plaintiff from discovering any information on this topic.[15]

13.    We know from public documents received through open records requests and produced by the City in this case that in mid to late June 2010, the Ad-Hoc Legislative Committee of the Dallas City Council confirmed and adopted the JNC's recommendations and submitted to the City Council its list of 11 candidates to fill the 11 available municipal court judge positions.  We know Plaintiff's name was not on that list.  However, the City has claimed legislative privilege prohibits Plaintiff from discovering any further information on this topic, including any deliberations by the Ad-Hoc Legislative Committee about Plaintiff.[16]

14.    We know from public records, documents received through open records requests, documents produced in this case, and the media that the Dallas City Council confirmed and adopted the Ad-Hoc Legislative Committee's recommendations on June 23, 2010 and did not reappoint Plaintiff for the 2010-2012 term.[17]  Plaintiff alleges in this suit, and strongly believes, that this was an act of retaliation.[18]  The City has affirmatively pled in its Answer that the City "made all employment decisions relative to Plaintiff for legitimate, non-discriminatory and non-retaliatory business reasons."[19] The City has also taken this position in its Response to Plaintiff's

---

[15] Exhibit 8, p. 65.

[16] Exhibit 8, pp. 59-60.

[17] Dallas City Council Meeting Minutes, dated June 23, 2010 (CITY 4127-4128), attached as Exhibit 14.

[18] *See* Plaintiff's First Amended Complaint [Dkt. 20], paras. 55, 67, 73.

[19] Defendant's Answer to Plaintiff's First Amended Complaint [Dkt. 24].

Motion for Partial Summary Judgment.[20]  However, the City has claimed legislative privilege prohibits Plaintiff from discovering any information concerning what criteria the City Council used in making this decision, what discussions were had concerning Plaintiff, or anything else about the City Council's decision making process on this personnel issue.[21]

15.     We know from public records and the media that Mayor Pro-Tem Dwayne Caraway made a speech at the city council meeting criticizing the City's decision to not reinstate Plaintiff, stating the process used in determining her non-reinstatement was "unfair and unprofessional," and she "was railroaded out."[22]  Caraway further publicly commented that judges should be judged based on the merits of what they did inside the courtroom, and based on the merits, Williams was one of the best judges on the bench.[23]  Caraway further stated that Williams "was punished because she raised lady issues," and the discussions about Williams "warranted a complete vetting of the allegations, accusations that were brought to our attention."[24]  Caraway's statements clearly indicate that the decision to not reinstate Williams was based on, and in retaliation for, Williams's complaints of discrimination, harassment and retaliation, for which no proper investigation was ever conducted.  However, the City, on the basis of legislative privilege, has prohibited Plaintiff from deposing Caraway concerning these

---

[20] Dkt. 68, p. 18.

[21] Exhibit 8, pp. 59-60, 95-96.

[22] "Former Muni Judge Brings Federal Lawsuit Against City; Claims Harassment, Retaliation," Dallas Observer Blogs, Wilonsky, Robert (March 1, 2011), attached as Exhibit 15;  Dallas Morning News: City Hall Blog, Thompson, Steve, http://cityhallblog.dallasnews.com/2011/02/video-mayor-pro-tem-caraway-de.html/ (February 14, 2011).

[23] *Id.*

[24] *Id.*

**PLAINTIFF'S OBJECTIONS AND NOTICE OF APPEAL OF MAGISTRATE'S ORDER REGARDING PLAINTIFF'S MOTION TO COMPEL INFORMATION WITHHELD UNDER "LEGISLATIVE PRIVILEGE" – PAGE 8**

comments or finding out any additional information concerning the basis for these public comments.[25]

# III.
## PROCEDURAL BACKGROUND OF DISCOVERY DISPUTE

16.    On March 22, 2012, Plaintiff requested the depositions of Administrative Judge Victor Lander, City Attorney Thomas Perkins, and City Council Member Dwayne Caraway. Plaintiff also requested availability for the depositions of the other members of the 2010 JNC and Dallas City Council.[26]  Plaintiff initially received no response to this request.

17.    Instead, on March 22, 2012, Defendant filed an "Emergency Motion for Continuance and Modification of the Scheduling Order and Brief in Support."[27]  In that motion, Defendant used the requested depositions as a basis for its need for a continuance, stating as follows:

> Finally, Plaintiff's counsel notified counsel for Defendant on March 22, 2012, that Plaintiff intends to take the depositions of over thirty witnesses, **including each and every member of the Judicial Nominating Committee for the City of Dallas, and all of the Dallas City Council members in 2010**. . . . It would be extremely difficult, if not impossible, to schedule all of the depositions in this case and complete them by the May 1st deadline.[28]

18.    Counsel for Plaintiff and Defendant met at a face-to-face conference at the offices of defense counsel on April 3, 2012 to discuss Defendant's emergency motion for continuance

---

[25] Exhibit 7.

[26] *See* Defendant's Emergency Motion for Continuance and Modification of Scheduling Order and Brief in Support [Dkt. 32], filed March 22, 2012, para. 4, attached as Exhibit 4.

[27] Exhibit 4.

[28] Exhibit 4, para. 4.

and outstanding discovery issues.   During that meeting, Plaintiff's counsel and Defendant's counsel agreed on a number of discovery issues, and Plaintiff's counsel agreed not to oppose Defendant's request for a continuance of the trial due to the discovery that still needed to be completed in the case.   Plaintiff's counsel also offered to first seek the depositions of Administrative Judge Victor Lander, City Attorney Thomas Perkins, Councilmember Dwayne Caraway and Councilmember Vonciel Jones Hill, and that Plaintiff would determine whether depositions of other JNC and City Council members would be needed after deposing these four witnesses (rather than initially attempting to depose all JNC and City Council members). Defendant's counsel agreed to this plan of action.[29]

19.     Depositions were discussed between counsel a number of times in April and May 2012.  On May 10, 2012, Plaintiff's counsel provided dates for Plaintiff's deposition, and again requested dates for the depositions of Perkins, Lander and Caraway.[30]   On May 11, 2012, Defendant's counsel wrote, "Can we talk on Monday? I hope to have some additional deposition dates for you by then."[31]

20.     On May 14, 2012, Defendant's counsel provided sent an email to Plaintiff's counsel, providing deposition dates for Lander and Perkins, and she wrote, "**I'll check into Dwayne Carraway's availability**."[32]

---

[29] Declaration of Gwen E. Pilgrim, attached as Exhibit 5.

[30] Email chain between Gwen E. Pilgrim and Courtney Perez, dated May 10-14, 2012, attached as Exhibit 6, p. 2

[31] Exhibit 6, p. 1.

[32] Exhibit 6, p. 1 (emphasis added) (typographical error in original).

21.     In late May and early June, 2012, counsel for Plaintiff followed with additional communications requesting dates for Dwayne Caraway's and Vonciel Jones Hill's depositions.[33] No response was provided from Defendant's counsel.

22.     On June 20, 2012, after not hearing from Defendant's counsel, Plaintiff's counsel followed up again:

> **Do you have dates for Dwayne Caraway's and Vonciel Jones-Hill's depositions yet?**  We need to get those scheduled as soon as possible.   When we originally spoke during our discovery conference a couple of months ago, we agreed not to notice all city council and JNC members right away and that we would take these four depositions (the above two, Lander and Perkins) first so that we could determine whether we would need any other City of Dallas people before the end of the discovery period.   I'm afraid that if we don't get these two on the calendar soon, we won't be able to make that determination.[34]

23.     On June 21, 2012, Defendant's counsel responded, "**We will not offer any Dallas City Council or JNC members for depositions on grounds of legislative privilege**."[35]  This was the first time the City ever asserted legislative privilege in this case.

24.     Following the City's refusal to provide Caraway, Hill, or any City Council or JNC member for deposition, Plaintiff made a number of attempts to obtain the information in other ways.

25.     On June 24, 2012, Plaintiff sent Defendant Requests for Admissions; but Defendant ultimately responded with a number of assertions of legislative privilege.[36]

---

[33] Exhibit 5.

[34] Email chain between Gwen E. Pilgrim and Courtney Perez, dated June 20-21, 2012, attached as Exhibit 7 (emphasis added).

[35] Exhibit 7 (emphasis added).

26.     On June 29, 2012, Plaintiff took the deposition of City Attorney Thomas Perkins in his individual capacity.[37] During the deposition, the City repeatedly instructed Perkins not to answer a number of questions on the grounds that such information was barred from discovery by "legislative privilege."[38]

27.     On July 10, 2012, Plaintiff requested the depositions of the City's 30(b)(6) representatives on a list of topics that included the following: the policy and procedures of the JNC in choosing municipal court judges; information provided to the JNC in choosing municipal court judges; policy and procedures of the JNC in discussing complaints against or by any municipal court judges; policy and procedures of the City Council in choosing municipal court judges; information provided to the city council for consideration in choosing municipal court judges from 2004 to the present; and policy and procedures of the city council in discussing complaints against or by any municipal court judges in choosing municipal court judges.[39]  The City responded that Perkins would be the designated 30(b)(6) representative on those topics but that he would not provide testimony on these topics outside of what was already provided in his individual deposition because of legislative privilege.[40]

---

[36] A copy of Defendant's Responses to Requests for Admissions was attached to Defendant's Appendix in Support of the Joint Status Report Concerning Plaintiff's Motion to Compel [Dkt. 56], at p. 1.

[37] Exhibit 8.

[38] *See, e.g.*, Exhibit 8, pp. 22, 46, 52-54, 59-60, 65-68, 79-80, 93, 95-96.

[39] Email chain between Gwen Pilgrim and Courtney Perez, dated July 10-17, 2012, attached as Exhibit 9.

[40] Exhibit 9, p. 1.

**PLAINTIFF'S OBJECTIONS AND NOTICE OF APPEAL OF MAGISTRATE'S ORDER REGARDING PLAINTIFF'S MOTION TO COMPEL INFORMATION WITHHELD UNDER "LEGISLATIVE PRIVILEGE" – PAGE 12**

## IV.
## PLAINTIFF'S MOTION TO COMPEL

28.    On July 27, 2012, Plaintiff filed a its "Motion to Compel Information Withheld Under Legislative Privilege and Brief in Support."[41] Plaintiff's Motion to Compel addressed a series of related issues: (A) whether the City properly instructed Thomas Perkins to withhold answers to certain questions during his deposition under claims of legislative and/or attorney-client privilege; (B) whether the City can refuse to present a 30(b)(6) representative on various topics under a claim of legislative privilege; (C) whether the City can refuse to present City Councilmember Dwayne Caraway for deposition under a claim of legislative privilege; (D) whether the City can refuse to present City Councilmember Vonciel Jones Hill for deposition under a claim of legislative privilege; (E) whether the City should be barred from presenting evidence at trial on those topics for which it has asserted legislative privilege; and (F) whether Plaintiff is entitled to attorneys' fees for time spent in relation to the motion to compel.

29.    On July 31, 2012, Magistrate Judge Irma Carillo Ramirez issued an order requiring the parties to further confer and file a Joint Status Report concerning the issues to which no agreement could be reached.[42]

30.    Counsel for Plaintiff and counsel for Defendant met at the offices of Plaintiff's counsel on August 8, 2012 and further conferred regarding the matters at issue and filed a Joint Status Report on August 14, 2012.[43]

---

[41] Plaintiff's Motion to Compel [Dkt. 45] and Appendix in Support [Dkt. 46].

[42] Dkt. 50.

[43] Dkt. 55.

31.     On October 16, 2012, Magistrate Judge Ramirez held a hearing concerning Plaintiff's Motion to Compel, granting the motion in part, ruling as follows: (1) Legislative privilege does not apply; (2) Attorney-client privilege does not apply; and (3) the City must present Thomas Perkins in his individual capacity for a second deposition on the questions that he was instructed not to answer during his first deposition.[44]   However, Judge Ramirez also denied the motion in part, holding: (1) the depositions of Caraway, Hill and Thomas Perkins as the 30(b)(6) representative were not properly noticed prior to the expiration of the discovery deadline because no formal "Notices of Deposition" were sent; and (2) Plaintiff's motion for an order prohibiting the use of any information that was withheld subject to legislative should be denied because she ruled legislative privilege did not apply and such a ruling would be within the District Court's discretion.[45]

## V.
## PLAINTIFF'S ARGUMENT AND AUTHORITIES

### A.     Plaintiff Properly Provided Written Notice of Its Intent to Depose Caraway and Hill; City Refused to Present Them; Issue Was Ripe for Decision.

#### 1.     Plaintiff's request for the depositions of Caraway and Hill met all the requirements of a formal deposition notice.

Under Rule 30(b)(1), "a party who wants to depose a person by oral questions must give *reasonable written notice* to every other party."[46]   There is no requirement under the rule that any specific form of the notice (other than it be in writing) is required.   The Rule only requires that the time and place of the deposition be expressed, but that time and place can be at the

---

[44] Dkt. 90.

[45] Dkt. 90.

[46] Fed. R. Civ. P. 30(b)(1) (emphasis added).

convenience of the parties. *See, e.g., Luhan v. Exide Technologies*, 2011 WL 1594952, at *3 (D. Kan. April 27, 2011) (citing 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures § 2212 (ed ed. 2010)); *Cerami v. Robinson*, 85 F.R.D. 371, 372 (D.C.N.Y. 1980 (holding fact that deposition notice left blank date of deposition did not excuse failure to attend deposition or respond to notice where notice was accompanied by a letter asking deponent to specify a date).

Plaintiff provided multiple notices, both written and oral, to Defendant of Plaintiff's intent to depose City Councilmembers Dwayne Caraway and Vonciel Jones Hill.  It was clear from these communications that these councilmember's formal depositions were being noticed, and counsel was attempting to find a time and place that would be convenient for all parties:

- April 3, 2012 – Plaintiff's counsel orally requested the depositions of Caraway and Hill (and only if necessary other city council and JNC members) at a discovery in conference at Defendant's counsel's office.[47]

- May 10, 2012 – Plaintiff's counsel e-mailed Defendant's counsel requesting dates for Caraway's deposition.[48]  Defendant's counsel responded, "Can we talk on Monday?  I hope to have some additional deposition dates for you by then."[49] Later, on May 14, 2012, Defendant's counsel further responded, "I'll check into Dwayne Carraway's availability."[50]

---

[47] Exhibit 5.

[48] Exhibit 6, p. 2.

[49] Exhibit 6, p. 1.

[50] Exhibit 6, p. 1 (typographical error in original).

- May-June 2012 – Plaintiff's counsel and Defendant's counsel had additional communications concerning the depositions of Hill and Caraway.[51]

- June 4, 2012 – Plaintiff's counsel sent Defendant's counsel an email again requesting dates for the deposition of Caraway and asking for dates for Hill's deposition.[52]

- June 20, 2012 – Plaintiff's counsel sent Defendant's counsel another email regarding Hill's and Caraway's depositions, writing as follows:

> Do you have dates for Dwayne Caraway's and Vonciel Jones-Hill's depositions yet?  We need to get those scheduled as soon as possible.  When we originally spoke during our discovery conference a couple of months ago, we agreed not to notice all city council and JNC members right away and that we would take these four depositions (the above two, Lander and Perkins) first so that we could determine whether we would need any other City of Dallas people before the end of the discovery period.  I'm afraid that if we don't get these two on the calendar soon, we won't be able to make that determination.[53]

On June 21, 2012, Defendant's counsel affirmatively refused to present Caraway and Hill for deposition, responding to the above email by writing, "We will not offer any Dallas City Council or JNC members for depositions on grounds of legislative privilege."

Plaintiff's notices to Defendant that it intended to depose Caraway and Hill and attempting, pursuant to the rules expressed in *Dondi Properties Corp. v. Commerce Sav. And Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988), to find a time and place that would be convenient

---

[51] Exhibit 5.

[52] Exhibit 16.

[53] Email chain between Gwen E. Pilgrim and Courtney Perez, dated June 20-21, 2012, attached as Exhibit 7 (emphasis added).

for all parties, met all of the requirements of a formal deposition notice pursuant to Rule 30(b)(1). The depositions were properly noticed within the discovery period; the motion to compel was properly filed (after further attempts to work out the issues) within the discovery period; Plaintiff's motion to compel these depositions should have been granted.

2.      *Even if the notices of deposition are considered to be informal, these notices were sufficient to form the basis for a motion to compel.*

Even if the Court does not believe that Plaintiff's multiple written and oral communications to Defendant's counsel are sufficient to constitute formal deposition notices, they are at least sufficient to make the decision ripe for decision by the Court. When Defendant refused to present Caraway and Hill for deposition, Plaintiff attempted to obtain the information through other discovery means (i.e. requests for admission and other depositions), but to no avail. As Defendant was refusing to present these City Councilmembers for deposition and refusing to provide any time and place that was convenient for all parties, Plaintiff filed its motion to compel. The issue was ripe for decision at that time. Plaintiff was not required to take the unnecessary step of sending a more formal document to Defendant's counsel, choosing a date and time that Plaintiff knew was not agreeable to all parties, and having Defendant's counsel go through the steps of having to file a motion to quash the deposition notices.

The Court in *Luhan v. Exide Technologies*, 2011 WL 1594952 (D. Kan. April 27, 2011) was faced with a similar situation. In *Luhan*, the plaintiff sent an email to the defendant's counsel requesting an inspection under Rule 34(b). The *Luhan* defendant responded by refusing to allow the plaintiff to conduct the discovery. The plaintiff then filed his discovery motion. Like in the instant matter, the *Luhan* defendant argued that the request was informal, and therefore could not form the basis of a motion to compel. The court noted the difference between

times when an informal discovery request receives no response from opposing counsel (at which

point a formal request would be required before filing a motion to compel) and times when

opposing counsel affirmatively refuses to allow the discovery after receiving an informal request

(at which point the issue was ready for a motion to compel).  The *Luhan* court specifically held

as follows:

> [W]hen one party responds to another's informal request, resort to
> a motion to compel is an acceptable next step.  This is precisely
> what plaintiff did.  He informally sought permission to videotape
> certain jobs being performed at defendant's plant.  Once the
> informal request was denied, plaintiff sought an order from the
> court to permit the discovery, which was granted.

2011 WL 1594952, at *3.

The court in *M.M. v. Yuman County*, 2011 WL 5445336 (D. Ariz. November 10, 2011)

(slip copy), found the *Luhan* reasoning to be persuasive.  In *Yuman County*, the court held that

when the defendant in that case responded to an informal request for an investigation report by

asserting that the document was not a required disclosure under Rule 26 and "appeared

privileged," that was sufficient to bring the issue before the court with a motion to compel.  *Id.* at

*1.

The rulings in *Luhan* and *Yuman* County are consistent with the principles expressed in

*Dondi*, namely, that lawyers should make reasonable efforts to conduct all discovery by

agreement and that scheduling lawyers should consult with opposing counsel before scheduling

depositions in a good faith attempt to avoid scheduling conflicts.  After Plaintiff's counsel

consulted with Defendant's counsel about the deposition times, and Defendant's counsel refused

to present the parties, the only way that Plaintiff's counsel could have sent a notice that was any

more formal than that previously sent would have been to unilaterally pick a date and time for the

depositions, wasting Plaintiff's time and resources in preparing the notices and then wasting Defendant's time in filing a motion to quash a deposition that Plaintiff already knew Defendant did not agree to attend.  It had already been clearly established that Defendant would not present these persons for deposition because of legislative privilege.  All matters in dispute were clearly laid out.  The parties continued discussions concerning legislative privilege and made other attempts to obtain the discovery, but ultimately, a motion to compel was required.  As legislative privilege does not apply in this case, Plaintiff's motion to compel should have been granted.

### B.  Plaintiff Properly Provided Written Notice of Its Intent to Depose a 30(b)(6) Representative; City Provided a Representative But Refused to Present Him; Issue was Ripe for Decision.

Under Rule 30(b)(6), the party sending the notice of deposition must merely (1) name the organization to be deposed, (2) set out with reasonable particularity the matters for examination.  Fed. R. Civ. P. 30(b)(6).  The organization must then designate one or more persons who consent to testify on its behalf and set out the matters on which each person designated will testify.  *Id.*[54]

All of the formal requirements of a 30(b)(6) deposition notice were met in this case.  On July 10, 2012, Plaintiff sent a written request, seeking the deposition of a City of Dallas 30(b)(6) representative on an enumerated list of specific topics.[55]  The City responded by designating three individuals as its 30(b)(6) representatives: Molly McCall, David Etheridge and Tom Perkins.[56]  Defendant provided dates for Molly McCall and David Etheridge, and Plaintiff took those

---

[54] Please note that Rule 30(b)(6) does not indicate that a time and place for the deposition needs to be specified in the notice.

[55] Exhibit 9.

[56] Exhibit 9.

depositions.[57]  City Attorney Thomas Perkins had already been deposed in his individual capacity and had asserted legislative privilege on a number of topics during that deposition.  The City refused to allow Perkins to testify regarding any more information on the topics on which he had been designated other than what he had already provided in the deposition he gave in his individual capacity.[58]

There is no difference between the steps Plaintiff took in this case concerning noticing the City's 30(b)(6) depositions and what the formal deposition notice rules require.  Rather than spend the time and money deposing Thomas Perkins a second time only to have him assert the same objections he had already asserted in his first deposition, Plaintiff filed a motion to compel the 30(b)(6) representative on these topics.  The deposition was properly noticed, and the issue was ripe for determination through a motion to compel.  Plaintiff's motion to compel the deposition of the City's 30(b)(6) representative should have been granted.

    **C.**    <u>**City Should Not Be Permitted To Hide Behind Legislative Privilege During Discovery and Surprise Plaintiff at Trial With Information Previously Withheld.**</u>

As discussed in the "Factual Background" section above, Defendant has asserted "legislative privilege" for information that goes to a number of key issues in dispute in this case.  Now, after the discovery period is complete, it has become clear that legislative privilege was never properly asserted, yet Defendant was able to hide this information from Plaintiff and could

---

[57] Please note that, prior to his deposition, David Etheridge was withdrawn as a 30(b)(6) representative by the City, and Molly McCall was designated on those topics for which Etheridge had previously been designated. Etheridge was deposed in his individual capacity.

[58] Exhibit 9.

technically, at this point, use it at trial to surprise Plaintiff.  Defendant is already using the bar of this information against Plaintiff in its Motion for Summary Judgment briefing in this case.

Although case law concerning the offensive use of the privilege in the "legislative privilege" context is slim, there is a vast library of case law concerning the offensive use of other privileges, including the Fifth Amendment Privilege against self-incrimination.  In this context, the law is clear that while one may assert the privilege, courts have not hesitated to forbid parties from using the privilege as a shield against discovery and then attempting to convert it to a sword by testifying at trial.  *See, e.g., C&W Construction Co. v. Brotherhood of Carpenters*, 108 F.R.D. 389, 393 (D. Hawaii 1985); *Backos v. United States*, 82 F.R.D. 743, 745 (E.D. Mich. 1979) (stating court would "exercise care to prevent plaintiffs from turning Fifth Amendment into an offensive tactic at trial by surprising the government with testimony concerning matters as to which the privilege was claimed during discovery."); *Duffy v. Currier*, 291 F.Supp. 810, 815 (D. Minn. 1968) (stating that court "would not tolerate nor indulge a practice whereby a defendant by asserting the privilege against self-incrimination during pre-trial examination and then voluntarily waiving the privilege at . . . trial surprised or prejudiced the opposing party.").

The proper remedy for limiting the prejudice faced by Plaintiff in this case would be to preclude the City from offering evidence concerning any of the issues for which it has asserted legislative privilege in this case.  *See, e.g., C&W Construction Co*., 108 F.R.D. at 393; *In Re Anthracite Coal Antitrust Litigation*, 82 F.R.D. 364, 369-70 (M.D. Pa. 1979) (precluding corporate defendant's introduction into evidence of testimony of corporate officers where officers invoked their fifth amendment privilege and refused to provide information to plaintiff).  As such, to the extent Defendant has asserted legislative privilege on any issue in this case, Defendant should be barred from submitting evidence on that issue at trial, as Plaintiff was not

provided with any opportunity to discovery this information.  The Magistrate's Order concerning this issues was erroneous and contrary to existing law.

**VI.**

**PLAINTIFF'S PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff Staci Williams respectfully requests that the Court vacate the Magistrate's Order denying Plaintiff's motion to compel the depositions of Caraway, Hill and a 30(b)(6) representative and denying Plaintiff's request that Defendant be prohibited from using any information withheld under legislative privilege at trial, and enter an order (1) compelling the depositions of Caraway, Hill and a 30(b)(6) representative within 30 days; (2) extending the discovery period for the limited purpose of conducting the depositions of these witnesses; and (3) prohibiting Defendant from presenting evidence on any issue for which it withheld information on the basis of "legislative privilege."

Respectfully Submitted,

*/s/ Gwen E. Pilgrim*

Brian A. Calhoun
State Bar No. 24044827
Gwen E. Pilgrim
State Bar No. 24046632
**CALHOUN PILGRIM LLP**
325 N. Saint Paul, Suite 3950
Dallas, Texas 75201
Telephone: 214-981-9200
Facsimile: 214-981-9203

**ATTORNEYS FOR PLAINTIFF
STACI WILLIAMS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record via the Court's ECF/CFM system on this 30th day of October, 2012.


*/s/ Gwen E. Pilgrim*_____
Gwen E. Pilgrim